███████████████████████████

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| CARBYNE BIOMETRICS, LLC, | |
|        Plaintiff, | Civil Action No. 1:23-cv-00324 |
|    vs. | |
| APPLE INC., | JURY TRIAL |
|       Defendant. | ████████████████ |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR
LACK OF SUBJECT MATTER ELIGIBILITY UNDER 35 U.S.C. § 101**

## **TABLE OF CONTENTS**

I.     LEGAL STANDARD ........................................................................................... 1

II.    THE FRAUD PATENTS CLAIM INELIGIBLE SUBJECT MATTER ......................... 2

     A.     Background of the Fraud Patents and Their Exemplary Claims............................ 2

     B.     Step One: The Fraud Patents are Directed to an Abstract Idea............................ 3

     C.     Step Two: The Fraud Patents Lack Any Inventive Concept.................................. 7

III.   THE AUTHENTICATION PATENTS CLAIM INELIGIBLE SUBJECT
     MATTER ......................................................................................................... 9

     A.     Background of the Authentication Patents and Their Exemplary Claims ............. 9

     B.     Step One: The Authentication Patents are Directed to an Abstract Idea ............. 10

     C.     Step Two: The Authentication Patents Lack Any Inventive Concept ................. 13

IV.   CONCLUSION................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Affinity Labs v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016)........................................................................9

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ................................................................................ *passim*

*Apple Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016)........................................................................2

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)........................................................................7

*Bilski v. Kappos*,
  561 U.S. 593 (2010) .........................................................................................2

*Blue Spike, LLC v. Google Inc.*,
  No. 14-cv-01650, 2015 WL 5260506 (N.D. Cal. Sept. 8, 2015),
  *aff'd*, 669 F. App'x 575 (Fed. Cir. 2016) ...........................................5, 6, 12, 13

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
  113 F.4th 1359 (Fed. Cir. 2024) ....................................................................14

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018)...................................................................7, 13

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011)........................................................1, 6, 7, 12

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014)..................................................................12, 15

*Dropbox, Inc. v. Synchronoss Technologies, Inc.*
  815 F. App'x 529, 533 (Fed Cir. 2020) ...........................................................6

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  958 F.3d 1178 (Fed. Cir. 2020)......................................................................13

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)....................................................................4, 11

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016)................................................................. *passim*

*Front Row Techs., LLC v. NBA Media Ventures, LLC*,
    204 F. Supp. 3d 1190 (D.N.M. 2016), *aff'd sub nom. Front Row Techs., LLC
    v. MLB Adv'd Media, L.P.*, 697 F. App'x 701 (Fed. Cir. 2017) ................................5

*GeoComply Sols. Inc. v. Xpoint Servs. LLC*,
    No. 22-1273, 2023 WL 1927393 (D. Del. Feb. 10, 2023) .......................................5

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)...............................................................................15

*Intell. Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017)......................................................................5, 9, 15

*Mobile Acuity Ltd. v. Blippar Ltd.*,
    110 F.4th 1280 (Fed. Cir. 2024) .............................................................................11

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016)....................................................................4, 12, 14

*NEXRF Corp. v. Playtika Ltd.*,
    547 F. Supp. 3d 977 (D. Nev. 2021),
    *aff'd*, 2022 WL 1513310 (Fed. Cir. May 13, 2022)................................................5

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
    696 F. App'x 1014 (Fed. Cir. 2017) ...........................................................10, 11, 12

*Q Techs., Inc. v. Walmart, Inc.*,
    21-CV-00779, 2024 WL 1146150 (W.D. Tex. Mar. 6, 2024).................................2

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017)......................................................................1, 12, 13

*Sensormatic Elecs., LLC v. Wyze Labs, Inc.*,
    484 F. Supp. 3d 161 (D. Del. 2020),
    *aff'd*, 2021 WL 2944838 (Fed. Cir. July 14, 2021) .............................................15

*Solutran, Inc. v. Elavon, Inc.*,
    931 F.3d 1161 (Fed. Cir. 2019)...............................................................................11

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ....................................................................... *passim*

*WhitServe LLC v. Dropbox, Inc.*,
    854 F. App'x 367 (Fed. Cir. 2021) .......................................................12, 14, 15

*Yu v. Apple Inc.*,
    1 F.4th 1040 (Fed. Cir. 2021) ..........................................................................4, 11

**Statutes**

35 U.S.C. § 101 ................................................................................................................ *passim*

## TABLE OF ABBREVIATIONS

| Term | Definition |
|---|---|
| Apple | Defendant Apple Inc. |
| Carbyne | Plaintiff Carbyne Biometrics, LLC |
| '105 | U.S. Patent No. 11,475,105 |
| '138 | U.S. Patent No. 11,514,138 |
| '010 | U.S. Patent No. 9,972,010 |
| '656 | U.S. Patent No. 10,713,656 |
| '886 | U.S. Patent No. 11,526,886 |
| Fraud Patents | The '010, '656, and '886 patents |
| Fraud Claims | Claims 1, 6, and 9 of the '010 Patent; claims 1 and 8 of the '656 Patent, and claims 1, 12 and 14 of the '886 Patent |
| Authentication Patents | The '105 and '138 patents |
| Authentication Claims | Claims 1, 7-8 and 25 of the '138 Patent and claims 1, 9, 14 and 35 of the '105 Patent |
| Asserted Patents | The '105, '138, '010, '656, and '886 patents |
| Asserted Claims | The Fraud Claims and Authentication Claims |
| '010 FH | Excerpt from the File History to U.S. Patent No. 9,972,010 |
| '886 FH | Excerpt from the File History to U.S. Patent No. 11,526,886 |
| Brief | Corrected Principal And Response Brief For Defendant/Cross-Appellant T-Mobile USA, Inc. at 58-59, *Prism Technologies LLC v. T-Mobile USA, Inc.*, Nos. 16-2031, 16-2049 (Fed. Cir.) (filed Sept. 22, 2016) |

**TABLE OF EXHIBITS**

| Exhibit | Document |
|---|---|
| Ex. A | Deposition Transcript of Markus Jakobsson, Volume 1 (July 9, 2024) |
| Ex. B | U.S. Patent No. 11,475,105 (attached as Exhibit B to the Complaint) |
| Ex. C | U.S. Patent No. 11,514,138 (attached as Exhibit C to the Complaint) |
| Ex. D | U.S. Patent No. 9,972,010 (attached as Exhibit D to the Complaint) |
| Ex. E | U.S. Patent No. 10,713,656 (attached as Exhibit E to the Complaint) |
| Ex. F | U.S. Patent No. 11,526,886 (attached as Exhibit F to the Complaint) |
| Ex. G | Excerpt from the File History of U.S. Patent No. 9,972,010, retrieved from the website of the U.S. Patent and Trademark Office |
| Ex. H | Excerpt from the File History of U.S. Patent No. 11,526,886, retrieved from the website of the U.S. Patent and Trademark Office |
| Ex. I | Corrected Principal And Response Brief For Defendant/Cross-Appellant T-Mobile USA, Inc. at 58-59, *Prism Technologies LLC v. T-Mobile USA, Inc.*, Nos. 16-2031, 16-2049 (Fed. Cir.) (filed Sept. 22, 2016) |
| Ex. J | Opening Expert Report of Dr. Edward Dunstone on Invalidity |
| Ex. K | Rebuttal Expert Report of Dr. Eric Cole on Validity |
| Ex. L | Exhibit G to Carbyne's Final Infringement Contentions |
| Ex. M | Deposition Transcript of Dr. Mark Jones, Volume 1 (Oct. 1, 2024) |
| Ex. N | Appendix A to Rebuttal Expert Report of Dr. Mark Jones on Validity |
| Ex. O | Opening Expert Report of Dr. Seth Nielson on Invalidity |
| Ex. P | Appendix H to Opening Expert Report of Dr. Mark Jones on Infringement |
| Ex. Q | Opening Expert Report of Dr. Mark Jones on Infringement |

The Asserted Claims are directed to ineligible subject matter under 35 U.S.C. § 101. Three patents are directed to detecting fraud in electronic transactions through the use of collected data (biometrics and/or location). The Federal Circuit found analogous claims "collect[ing] and examin[ing] data to authenticate the user[]" in transactions directed to abstract ideas. *See Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1351-52 (Fed. Cir. 2021) ("USR"). Two patents are directed to limiting access to data to authorized users, again using biometric data. The Federal Circuit again found analogous claims "directed to the abstract idea of collecting and examining data to enable authentication" to be patent ineligible. *Id.* at 1352. No Asserted Claim recites an inventive concept. They use conventional computer components for conventional functions. Accordingly, Apple respectfully requests summary judgment of invalidity under § 101.

## I.     LEGAL STANDARD

Abstract ideas are not patentable. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). Courts apply a two-step framework to "distinguish[] patents that claim . . . abstract ideas from those that claim patent-eligible application of those concepts." *Id.* at 217. At **step one**, courts determine whether the claims "are directed to a patent-ineligible concept." *Id.* at 218. "The inquiry often is whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (citation omitted). A claim that can be performed mentally or analogized to brick-and-mortar concepts likely is abstract idea. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (finding claim directed to fraud detection for electronic interactions an "unpatentable mental process"); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (finding fraud detection claims "merely implement an old practice in a new environment"). Software claims may be abstract if "[t]hey do not claim a particular way of programming [to accomplish the claimed functionality], but instead merely claim

the resulting systems" or if they "are not directed to a specific improvement in the way computers operate." *Apple Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016).

At **step two**, courts remove the abstract idea from the claim and search the remainder for an "inventive concept sufficient to transform" the abstract idea into a patent-eligible application. *Alice*, 573 U.S. at 221 (citation omitted). There is nothing inventive about implementing an abstract idea using "'well-understood, routine, conventional activit[ies]' previously known to the industry," *id.* at 225 (alteration in original) or limiting the abstract idea to a "particular technological environment," *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010) (citation omitted). Although the question of whether an element or combination of elements is "well-understood, routine and conventional" is a question of fact that must be shown by clear and convincing evidence, "[s]ummary judgment must be granted when, drawing all reasonable inferences in favor of the non-movant, there is no genuine issue as to any material fact." *Q Techs., Inc. v. Walmart, Inc.*, 21-CV-00779, 2024 WL 1146150, at *2 (W.D. Tex. Mar. 6, 2024) (citation omitted).

## II.    THE FRAUD PATENTS CLAIM INELIGIBLE SUBJECT MATTER

### A.    Background of the Fraud Patent Claims

The Fraud Patents describe "[t]echniques for reducing fraud."[1] '010 at Abstract; Ex. A at 155:3-156:12. To address the non-technological problem of fraudulent transactions, these patents propose non-technological solutions to increase the real or perceived likelihood that the fraudulent act will be detected. '010 at 4:45-48. The patents describe capturing and analyzing biometrics or location to ensure the user may authorize a transaction. *Id.* at 6:39-45; 8:55-63; 10:10-12.

'010 claim 9 (*see* Appx 1 for complete claim language) recites receiving and storing information (a virtual likeness, an indication of an action, biometric information); displaying

---

[1] The Fraud Patents' specifications are identical other than cross-references to each other. All citations in this section are to the '010 specification. All emphasis added unless otherwise noted.

information (virtual likeness and icon); analyzing information (a fraud detection analysis); and a result (completing a transaction). *See also* '010 cl. 1 (same). The '656 and '886 independent claims are similar, except they also recite capturing location information, and the '656 recites storing biometric information instead of a virtual likeness. *E.g.*, '656, cl. 1; '886, cl. 1. The Fraud Claims use only functional language directed to the abstract idea of receiving/storing, displaying, and analyzing information, and nothing in this ordered combination adds an inventive concept.

The Fraud Claims do not recite **how** to perform the purportedly inventive fraud detection analysis. Rather, the claims recite merely an input to that analysis—*i.e.*, biometric (and, for the '656 and '886, location) information—and the output of that analysis—*i.e.*, a determination that a user is alive. But the claims are silent on **how** to conduct that analysis and do not tether it in any meaningful way to the recited components. The specification is equally silent. And the asserted dependent claims add only minor features that do not change the character of the independent claims. These dependent claims recite display of additional information ('010 cl. 6; '656 c. 8); collection of additional information (*e.g.*, photographs) ('886 c. 14); and determining whether a face is detected in captured images—without any recitation of how to perform them ('886 cl. 12).

During prosecution of the '010, the examiner rejected the pending claims six times under § 101, and applicant overcame these rejections only by adding the step of determining whether a user is "alive." Ex. G at 8. Later, during prosecution of the '886, the same examiner rejected the pending claims under § 101 even though they recited the "alive" determination, allowing the claims only once the limitation of capturing location data was added. Ex. H at 15-16, 21-23. As discussed below, neither feature saves the claims from ineligibility.

### B.    Step One: The Fraud Patents are Directed to the Abstract Idea of Collecting, Receiving, and Analyzing Data before Authorizing a Transaction

The Fraud Claims are directed to the abstract idea of collecting, receiving, and analyzing

information about a user—namely, biometric (and, for the '656 and '886, location) information—
to enable a transaction, in other words, "collect[ing] and examin[ing] data to authenticate the user's
identity." *USR*, 10 F.4th at 1352. The claims here are even more abstract than those in *USR*, which
recited a "device that includes a biometric sensor, user interface, communication interface, and
processor" to "(1) authenticate the user based on two factors—biometric information and secret
information"—and "(2) generate encrypted authentication information to send to the secure
registry through a point-of-sale device." *Id.* Here, as in *USR*, the claims are abstract because they
"recite 'conventional actions in a generic way'" such as "authenticating a user using conventional
tools" (*e.g.*, displaying information, receiving a transaction request, capturing biometric
information) and permitting a transaction to proceed "without 'improv[ing] any underlying
technology.'" *Id.* The Federal Circuit also held similar claims abstract in *FairWarning*. *E.g.*, 839
F.3d at 1093 ("detecting fraud" by "analyzing data" such as user identifier data).

　　　The results-oriented nature of the claims highlights their abstractness. The central—and
supposedly inventive—limitation concerning the fraud detection analysis ("alive") recites only the
inputs to and outputs from a black box, without discussing how to conduct the analysis or how the
recited components participate. That "essentially result-focused, functional character" confirms
that the claims are "ineligible under § 101." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350,
1356 (Fed. Cir. 2016). Adding rote recitations of conventional physical components (*e.g.*, a
processor, memory, camera) performing their conventional functions does nothing to render the
claims nonabstract. *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021).

　　　While the Fraud Claims require that certain information be "captur[ed]" (biometrics,
location) and a certain determination made (whether a user is "alive"), those features do not save
the claims from being abstract. ***First,*** collecting and analyzing information is an ineligible abstract

idea, and limiting that process to either specific information or a specific technological environment (an electronic transaction) does not render the claims nonabstract. *FairWarning*, 839 F.3d at 1094-95; *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1330 (Fed. Cir. 2017).

**Second,** use of biometric data does not render a claim nonabstract. *USR*, 10 F.4th at 1353. The claims do not purport to improve on the use or capture of biometrics; as in *USR*, there "is no description in the patent[s] of a specific technical solution by which the biometric information . . . is generated." *Id.* at 1352. The claims merely recite using biometric information to make a determination—something humans have done for eons. *See, e.g.*, *Blue Spike, LLC v. Google Inc.*, No. 14-cv-01650, 2015 WL 5260506, at *1, *5-6 (N.D. Cal. Sept. 8, 2015) (steps comparing "signals," including biometrics like iris scans, "mirror[]" the human mind), *aff'd*, 669 F. App'x 575 (Fed. Cir. 2016) (non-precedential). The inventor admitted that the patents disclose no new algorithms for using or implementing biometrics. Ex. A at 244:17-21; 246:16-24; 250:17-251:10.

**Third**, use of location information in the '656 and '886 claims does not render them nonabstract. Using location information in connection with a transaction is an abstract idea. *See, e.g.*, *NEXRF Corp. v. Playtika Ltd.*, 547 F. Supp. 3d 977, 991 (D. Nev. 2021) ("incentivizing gambling tailored to a user's location" is abstract), *aff'd*, 2022 WL 1513310 (Fed. Cir. May 13, 2022); *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 204 F. Supp. 3d 1190, 1268, 1273-74 (D.N.M. 2016) (authorizing "video based on a user's location" abstract), *aff'd sub nom. Front Row Techs., LLC v. MLB Adv'd Media, L.P.*, 697 F. App'x 701 (Fed. Cir. 2017) (non-precedential). Verifying location is a longstanding commercial practice and method of organizing human activity. Nevada casinos adopted this practice when they "took steps to ensure that persons seeking to place wagers were" in Nevada. *GeoComply Sols. Inc. v. Xpoint Servs. LLC*, No. 22-1273, 2023 WL 1927393, at *6 (D. Del. Feb. 10, 2023) (holding claims abstract). The claims provide no new

technical solution for capturing or analyzing location information.

  ***Fourth***, the black-box step of determining whether a user is "alive" does nothing to render the claims nonabstract. In *Dropbox, Inc. v. Synchronoss Technologies, Inc.*, the Federal Circuit addressed claims directed to authentication and data security, where the claimed advance was a recited "access checker" that permitted access to a resource only if certain specified conditions were met. 815 F. App'x 529, 533 (Fed Cir. 2020) (affirming dismissal under § 101). The Court deemed that feature a "functional abstraction;" the specification offered no "technological solution" for implementation, instead treating the feature "as a black box." The same is true here. The claims recite nothing more than the result of determining that the user is alive, without specifying how that is done. The specification also contains no detail: "Techniques for confirming that the object being photographed is alive (*e.g.*, by taking multiple photographs in rapid succession) …" '010, 8:55-60. At best, this lone sentence describes an input to an undisclosed function. Dr. Jakobsson admitted that the patents disclose no algorithm but merely provide a "simple description of what the goal is." Ex. A at 244:17-21; 246:16-24.[2]

  The claims are also abstract because they can largely be performed via mental processes. *Blue Spike*, 2015 WL 5260506, at *5. Determining that a person is alive or dead, or present rather than absent, is analogous to longstanding commercial practices mentally performed by, *e.g.*, bank tellers and notaries. *See Cybersource*, 654 F.3d at 1373 (identifying fraud based on contextual information "can be performed . . . in the human mind"). Dr. Jakobsson effectively admitted that these steps can be performed mentally, testifying that the patents reduce fraud through "a

---

[2] While the '010 and '656 claims recite an "alive" determination based "at least in part" on biometric information, they do not specify the type of information, how it is used, or how the determination is made. As the '886 examiner found, the specification's disclosure is limited to taking multiple photographs in succession. *E.g.*, H at 5-6. While the '886 adds that "alive" is determined by analyzing "the set of images," this too is an unexplained black-box determination.

*psychological observation* that is being taken advantage of in a technological sense." Ex. A, 159:2-10. Implementing that "psychological observation" with conventional technology rather than a human brain does not make them less abstract. *Id.*; *see Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (abstract idea limited to a technological environment still abstract).

### C.       Step Two: The Fraud Patents Lack Any Inventive Concept

Once the abstract ideas of analyzing biometrics and location are stripped from the Fraud Claims, what remains adds nothing "sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217-18, 221 (citation omitted). The undisputed facts show the Fraud Patents lack any inventive concept. Apple's expert opined that no claim element was inventive, Ex. J ¶¶ 950-964, which Carbyne's expert did not rebut. Ex. K ¶¶ 692-699; *see* Ex. A at 218:23-24 (inventor testifying that "each limitation" "by itself is not necessarily novel").

Once the abstract idea is removed, all that remains are undisputedly conventional computer components used in a conventional manner, Ex. J ¶¶ 950-951; Ex. K ¶¶ 692-699 (not disputing Apple's Expert's opinion on this). Named inventor Dr. Jakobsson testified that the claimed computer components were known. Ex. A at 213:17-2 (processor); 254:20 ("I did not invent memory"); 254:22- 255:6; *see also* '010 at 2:6-10 ("[A] component . . . may be implemented as a general component that is temporarily configured to perform the task"); 3:54-55 ("device 110 includes typical components such as a CPU, RAM . . . ."). Such conventional components, even combined, are not sufficient to transform an abstract idea into a patent-eligible claim. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) (application of an abstract idea using conventional techniques not sufficient to transform claim); *FairWarning*, 839 F.3d at 1096.

Even the combination of elements, on the undisputed facts, is not inventive. Ex. J ¶ 962. Carbyne's expert, Dr. Cole, opines that the "Asserted Claims provide for an improved graphical user interface coupled with fraud detection analysis that did not exist in the prior art." Ex. K ¶ 699.

But Dr. Cole improperly includes elements of the abstract idea in the purported concept, *e.g.*, Ex. J ¶ 953 ("limitations [such as the fraud detection analysis] are recited with generality and are also part of the abstract idea itself"), and so Dr. Cole's proffered inventive concept is irrelevant to the analysis required by *Alice*, 573 U.S. at 218 (inventive concept must add "significantly *more*"). Regardless, Dr. Cole's testimony confirms that each aspect of his purported abstract concept was well-known, routine, and conventional. By "improved graphical user interface," Dr. Cole means one that "includes a virtual likeness of the face of the account holder within the transaction interface," Ex. K ¶ 697, but Dr. Cole does not dispute that "it was conventional to have processor(s) configured to render images in one or more interfaces, such as rendering a virtual likeness of an account holder or transaction recipient."[3] Ex. J ¶ 955. By "fraud detection analysis," Dr. Cole means capturing information "that determines at least in part that the user is alive," but he later opines that techniques "to exactly determine a user is alive . . . were known to those in the relevant field at the time of the invention." Ex. K ¶ 677.

Nor do the claims provide a technological solution rooted in computer technology to address a problem specifically arising in the realm of computers. Ex. J ¶ 946. Dr. Cole opines that each aspect of his purported inventive concept provides a separate purported benefit, but each benefit identified by Dr. Cole addresses a problem that predates computers and e-commerce. Ex. K ¶ 699 ("increase feelings of guilt" and "increased likelihood…that a fraudster will be caught"). The specification implies the Fraud Patents provide a solution applicable to physical and electronic transactions. Ex. D at 1:19-29 ("Fraudulent transactions are an ongoing problem….at physical locations….[and] in the context of electronic transactions. Improved techniques to prevent fraud

---

[3] Dr. Cole's opinion that the "graphic user interface" "would increase feelings of guilt in a would-be fraudster" (Ex. K ¶ 699) is belied by the claims, which do not require the displayed likeness be that of the sender—indeed, Carbyne accuses a likeness of a recipient. *E.g.*, Ex. L at 5.

would be useful."). Consistent with the specification, Dr. Jakobsson testified that fraud may be committed by an individual "using [a] stolen card to perform transactions at physical locations," Ex. A at 155:7-18, which is a problem arising long before e-commerce. Applying the generic solution to electronic transactions does not create an inventive concept. *See Intell. Ventures I*, 850 F.3d at 1327 (concluding claimed activity was abstract as it was "longstanding conduct that existed well before the advent of computers and the Internet"). In short, the claimed features "are described and claimed generically rather than with the specificity necessary to show how those components provide a concrete solution to the problem addressed by the patent." *Affinity Labs v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016). Some claims recite no components at all. '010 cl. 9.

## III.    THE AUTHENTICATION PATENTS CLAIM INELIGIBLE SUBJECT MATTER

### A.    Background of the Authentication Patents Claims

The Authentication Patents purport to improve existing "authentication techniques" by making accessing resources less "tedious." '138, 3:1-43, 3:61-64. The patents have the same title, inventor, and assignee, and share similar specifications.[4] Their purported solution is to verify the user's identity by matching biometric information (*e.g.*, fingerprint) to a template (*e.g.*, fingerprint patterns) before sending the user's credentials (*e.g.*, cryptographic keys) to a requested resource on the user's behalf, '138, 3:1-4, avoiding the need for user-entered credentials, '138, 2:65-3:1.

'138 claim 1 (*see* Appx 2) recites storing information (a record comprising a biometric template and cryptographic key); displaying information (a prompt); receiving information (a biometric input); analyzing information (determining a match between received and stored information); accessing information (accessing a credential); transmitting information (transmitting the credentials); and removing information (facilitating wiping of

---

[4] The '105 specification adds Figs. 9-15 and an "ADDITIONAL EMBODIMENTS" section to the '138 specification. Unless stated otherwise, all citations are to the '138.

information).[5] '138, 3:21-55, 4:44-46, 6:29-7:23, Fig. 5. The '105 independent claims are similar,

except they do not recite a visual prompt or wiping. The '105 recites "initiating a backup" to a

device (without reciting how) and receiving and matching "authentication information," again

without specifying how, '105, cl. 1. The claims do not recite any new "authentication technique"

or any new technology for performing the recited functions.

Instead, the patents emphasize that their authentication techniques are "widely deployable"

by using "general component[s]" and can be implemented "in numerous ways," in a "variety . . .

of devices" (*e.g.*, "gaming systems," "mice," and "door locks") to conduct "a variety" of

transactions with a "variety of services." '138, 1:44-46, 2:6-23, 2:36-3:16, 4:35-37. The "general

component[s]" used to perform the techniques—generic processors, memory, storage—are recited

performing their conventional functions, such as receiving, analyzing, and transmitting data. '138,

2:16-23, 3:60-4:3, 4:13-4:31, 5:10-45, 6:50-57, 7:48-8:2, Fig. 5. The dependent claims add only

minor features that do not change the character of the independent claims. They recite merely

storing information ('105 cl. 9); wiping information ('138 cls. 7-8); and otherwise generic

components, '105, cl. 14 ("biometric user input element," *e.g.*, a sensor (22:9-14)).

### B.    Step One: The Authentication Patents are Directed to the Abstract Idea of Authenticating User Identity Before Granting Access To Data

The Authentication Claims are directed to the idea of facilitating access to resources based

on authenticating a user's identity, or in other words, "authenticating a user using conventional

tools and generating and transmitting that authentication—without improv[ing] any underlying

technology"—and so are directed to an abstract idea. *USR*, 10 F.4th at 1352 (citation omitted); *see

also Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017).

---

[5] The asserted independent claims recite substantively similar limitations reciting either a system or computer readable medium. *Compare* '138 cl. 1 *with* '138, cl. 25; '105, cls. 1, 35.

*HIGHLY CONIDENTIAL – ATTORNEYS EYES ONLY*

Here, as in *USR*, the claims are abstract because they "'simply recite conventional actions in a generic way' (*e.g.*, receiving a transaction request, verifying the identity of a customer . . . allowing a transaction) and 'do not purport to improve any underlying technology.'" 10 F.4th at 1349 (citation omitted). The claims here are analogous to those the Federal Circuit found abstract in *Prism*, which recited "(1) receiving identity data from a device with a request for access to resources;" (2) "confirming the authenticity of the identity data;" "(3) determining whether the device identified is authorized;" and "(4) if authorized, permitting access." 696 F. App'x at 1017. The claims here similarly recite storing authentication information; receiving a user's request for access to resources; receiving identity data; determining a match between received and stored authentication information; and, if authorized, accessing and transmitting credentials to permit access. The Federal Circuit has "by now frequently held" that such claims reciting generalized steps using generic computer components are directed to abstract ideas. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1293 (Fed. Cir. 2024) ("steps of collecting, analyzing, and presenting information" through conventional use of generic components directed to abstract idea).

While some asserted claims recite displaying a prompt to input information and facilitating wiping information, these features recite conventional actions in a generic way and do not purport to improve any underlying technology. *See USR*, 10 F.4th at 1349-50. The Federal Circuit has found such limitations abstract. *E.g.*, *Elec. Power*, 830 F.3d at 1355 (generic display technology).

The "essentially result-focused, functional character" of the Authentication Claims confirms they are "ineligible under § 101." *See Elec. Power*, 830 F.3d at 1356. While some claims recite generic physical components (interface, processor, storage) performing standard functions, that is insufficient to render the claims nonabstract. *Yu*, 1 F.4th at 1043; *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019).

Instead of being "necessarily rooted in computer technology" "to overcome a problem specifically arising in the realm of computer[s]," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1265 (Fed. Cir. 2014), the claims merely introduce existing practices into a different environment—a hallmark of ineligibility. *E.g.*, *FairWarning*, 839 F.3d at 1094-95. Facilitating access to a resource after verifying a person's identity is an activity long performed by humans. For example, security guards have long been stationed at a building's entrance to verify a visitor's identity before allowing access, and to advise a building occupant of the visitor's arrival. Security guards commonly require a photo ID, copy IDs for future verification, provide access passes so authorized visitors can proceed unimpeded, and wipe personal records (*e.g.*, copies of IDs) when they are outdated or not needed. *Prism*, 696 F. App'x at 1017 (citing Ex. I (Brief) at 58-59 describing security guard ID check as pre-computer age corollary). Dr. Jakobsson confirmed that the Authentication Claims address this very concept, analogizing the disclosed "authentication translation" to a security guard verifying a visitor's identity to allow building access. Ex. A at 55:9-25. That these steps can be performed mentally or with pen and paper underscores their abstractness. *CyberSource*, 654 F.3d at 1371. Nor do the other limitations affect this analysis:

***First***, backing up, storing, and wiping information, and generic encryption/decryption, does not render a claim nonabstract. *E.g.*, *WhitServe LLC v. Dropbox, Inc*., 854 F. App'x 367, 371-72 (Fed. Cir. 2021). The claims do not purport to improve upon techniques for performing these functions; to describe an inventive manner of doing so; or to claim inventive tools for doing so. *See Alice*, 573 U.S. at 226. Such limitations are commonly found abstract. *WhitServe*, 854 F. App'x at 372 ("maintaining data records, including storing records at different sites for added protection" abstract); *RecogniCorp*, 855 F.3d at 1327. And humans have done these things for decades. *See, e.g.*, *Blue Spike*, 2015 WL 5260506, at *5. The '105 claims recite backing up to a same-brand

device, but no claim describes *how* to do so or includes any technological improvement and thus cannot render the claims nonabstract. Ex. M at 13:8-21 (Carbyne's Expert unable to articulate a technological benefit of same-brand backup), 128:10-15, 129:22-130:2 (Carbyne's Expert did not analyze incremental technical benefit of same-brand backup). Two abstract ideas do not make the claim nonabstract. *RecogniCorp*, 855 F.3d at 1327.

*Second*, generic computer components (*e.g.*, sensors, secure storage, processors) cannot render the claims not abstract. *Alice*, 573 U.S. at 226.

*Third*, for the same reasons discussed in Section II.B, mere use of biometric information in the Authentication Claim does not render those claims nonabstract. *E.g.*, *Blue Spike*, 2015 WL 5260506, at *1, *5-6; *see also Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1181 (Fed. Cir. 2020) ("authentication information" found abstract).

## C.     Step Two: The Authentication Patents Lack Any Inventive Concept

"[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept" sought in step two. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). For authentication technology, patent eligibility "often turns on whether the claims provide sufficient specificity to constitute an improvement to computer functionality itself." *USR*, 10 F.4th at 1346. The Asserted Claims fall far short. All that is claimed beyond the abstract idea itself are generic or conventional components, or components recited in purely functional terms, none of which is sufficient. *See Alice*, 573 U.S. at 222-23.

Under the undisputed facts, the patents do not claim an improvement to computer functionality. Apple's expert opined that no inventive concepts are present, and Carbyne's expert did not identify any inventive concepts in response. Ex. N ¶¶ 10-16; Ex. M at 17:10-19 ("I haven't attempted to independently formulate what the inventive concept is."); Ex. O ¶¶ 1774-1779. One way "to determine what the patent asserts is the claimed advance over the prior art" is to analyze

13

conventionality. *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1369 (Fed. Cir. 2024). As described above, Dr. Jakobsson testified that the Authentication Patents are directed to conventional activity analogous to a security guard providing access to a building guest. Ex. X at 55:9-25. Although Dr. Jones opined that Apple's expert omitted same-brand backup and wiping from his step two analysis, Dr. Jones acknowledged that wiping was known and could point to no technological benefit of same-brand backup. *See* Ex. N ¶¶ 10-16; Ex. M at 11:20-22 (Q. "[I]s it your contention that remote wiping was not known before the '138 patent? A. No."); 13:8-13:21 (unable to articulate a technological benefit of same-brand backup), 128:10-15, 129:22-130:2 (did not analyze incremental technical benefit of same-brand backup).

It is undisputed that the hardware recited in the Authentication Claims is generic and conventional, as affirmed by the specification, Dr. Jakobsson, and Dr. Jones. '138, 2:16-20 (processor and memory "may be implemented as 'general component[s]'"); 3:66-4:5 (sensor as "*e.g.*, a camera or fingerprint reader"); Ex. A at 214:2 ("Processors were known."), 254:20 ("I did not invent memory"); 254:22- 255:6 (did not invent a memory that is coupled to a processor and configured to provide the processor with instructions); Ex. N ¶¶ 12-13 (not opining that any element is inventive); Ex. O ¶ 1775, 1777; *see Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) ("interface" not an inventive concept); *WhitServe LLC.*, 854 F. App'x at 372 ("storing data is a generic computer function"). No one contends the secure storage and restricted interface between processors are "inventive concepts"—these features were well known. *See* Ex. N ¶¶ 12-13; Ex. P ¶¶ 2-7 (relying on POSITA understanding to show disclosure of restricted interface). Biometric limitations including "authentication information" are generic. '138, 3:31-35, 4:38-40 (fingerprint, photograph, voiceprint, retina scan, typing speed), 3:31-35, 4:38-40 (fingerprint patterns, a photograph); Ex. A at 55:9-25 (discussing use of driver's

license photo for authentication); Ex. N ¶¶ 12-13.

The routine functions performed by these components, such as "receiving," "transmitting," and securely "storing" data, viewed individually and as an ordered combination, do not transform the abstract idea into patent-eligible subject matter. *See, e.g.*, *Intell. Ventures I*, 850 F.3d at 1329 (sending/receiving data is routine and generic); *WhitServe LLC.*, 854 F. App'x at 373 (storing data is "generic" and backing up to a separate location "well-understood," citing safe deposit boxes); *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, 484 F. Supp. 3d 161, 167-69 (D. Del. 2020) (securing storage of data part of abstract idea), *aff'd*, 2021 WL 2944838 (Fed. Cir. July 14, 2021). ); *cf. DDR*, 773 F.3d at 1258. Dr. Jakobsson agreed such functions are not inventive. Ex. A. at 214:10-11 (receiving biometric information understood), 214:12-16 (similar), 215:6-9 (storing received biometric information understood), 221:25-222:4 (capturing biometric information understood), 228:21-24-229:1-5 (comparing captured and stored biometric information understood). Nor does Dr. Jones contend the ordered combination is inventive. Ex. N ¶ 16. For good reason: the patents state that "the order of steps" "may be altered." '138, 2:14-15; *see USR*, 10 F.4th at 1358.

The claims are not rooted in computer technology to address a problem specifically arising in the realm of computer networks. The "tedium" of accessing a restricted resource is not specific to computers, as anyone who has accessed a secure government, military, or higher education building in the last twenty years can attest. '138, 1:35-46. "[A]dding computer functionality to increase the speed . . . does not confer patent eligibility." *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015)).

## IV.    CONCLUSION

For the foregoing reasons, the Court should find all Asserted Claims invalid under § 101.

Dated: October 30, 2024

/s/ Andrew Radsch
Brian C. Nash
Regan J. Rundio
**MORRISON & FOERSTER LLP**
300 Colorado St., Suite 1800
Austin, TX 78701
Tel: (512) 617-0650
Fax: (737) 910-0730
Email: BNash@mofo.com
Email: Rrundio@mofo.com

James R. Batchelder (*pro hac vice*)
Andrew Radsch
James Mack
**ROPES & GRAY LLP**
1900 University Avenue
East Palo Alto, CA 94303-2284
Tel: (650) 617-4000
Fax: (650) 617-4090
Email: James.Batchelder@ropesgray.com
Email: Andrew.Radsch@ropesgray.com
Email: James.Mack@ropesgay.com

Cassandra Roth (*pro hac vice*)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090
Email: Cassandra.Roth@ropesgray.com

Allen S. Cross (*pro hac vice*)
Nicole S. L. Pobre (*pro hac vice*)
**ROPES & GRAY LLP**
2099 Pennsylvania Avenue, N.W
Washington, DC 20006
Tel: (202) 508-4600
Fax: (202) 508-4650
Email: Allen.Cross@ropesgray.com
Email: Nicole.Pobre@ropesgray.com

S. Lara Ameri (*pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600

████████████████████████

Tel: (617) 951-7000
Fax: (617) 951-7050
Email: Lara.Ameri@ropesgray.com

Jeffrey T. Quilici
TX State Bar No. 24083696
ORRICK, HERRINGTON &
SUTCLIFFE LLP
200 W. 6th Street, Suite 2250
Austin, TX 78701
Tel: (512) 582-6950
Fax: (512) 582-6949
Email: jquilici@orrick.com

***Attorneys for Defendant Apple Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record are being served with a copy of the foregoing

document via electronic mail on October 30, 2024

*/s/ Andrew Radsch*
Andrew Radsch