IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **CARBYNE BIOMETRICS, LLC,** | No. 1:23-CV-00324-ADA |
| Plaintiff, | |
| v. | JURY TRIAL |
| **APPLE INC.,** | |
| Defendant. | |

**DEFENDANT APPLE INC.'S PRE-HEARING BRIEF CONCERNING PLAINTIFF'S LACK OF STANDING TO ASSERT THE AUTHENTICATION PATENTS**

██████████████████████████

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. PRESENTATION OF EVIDENCE AND ARGUMENT AT HEARING .......................... 2

III. KEY POINTS FOR THE HEARING................................................................................... 2

    A. The Agreement Automatically Assigned the Alleged Inventions and Resulting Patents to PayPal ............................................................................... 2

        1. Dr. Jakobsson Conceived, Reduced to Practice, and Filed Patent Applications on the Alleged Inventions while Employed by PayPal ......... 2

        2. The Agreement Contains Broad Automatic Assignment Language ........... 3

    B. Dr. Jakobsson Cannot Carry its Burden that § 2870 Applies to the Authentication Patents ............................................................................................. 4

    C. PayPal Never Assigned the Inventions Back to Dr. Jakobsson .............................. 8

    D. Dr. Jakobsson's Claim that He Disclosed His Inventions to PayPal Employees is Irrelevant........................................................................................... 9

| Exhibit | Document |
|---|---|
| Ex. 1 | PayPal's Employee Proprietary Information and Inventions Agreement (Carbyne023028-Carbyne023053) |
| Ex. 2 | July 10, 2024 Bjorn Markus Jakobsson Deposition Transcript |
| Ex. 3 | Carbyne's 5th Suppl. Resp. & Objs. to Apple's 1st Set of Interrogatories Nos. 1-16 |
| Ex. 4 | U.S. Provisional Application No. 61/569,112 |
| Ex. 5 | U.S. Provisional Application No. 61/587,387 (APL-CAR-PA_0026910-APL-CAR-PA_0026933) |
| Ex. 6 | Defendant Apple Inc.'s Notice of Deposition to Plaintiff Carbyne Biometrics, LLC |
| Ex. 7 | Expert Report of Seth Nielson, Ph.D., B.E., Regarding Invalidity of U.S. Patent Nos. 10,929,512; 11,514,138; and 11,475,105 |
| Ex. 8 | Innography Report (APL-CAR-PA_0047056) |
| Ex. 9 | April 30, 2013 The Next Web Article, "PayPal streamlines the mobile shopping experience with its new Log In with PayPal identity solution." |
| Ex. 10 | Rebuttal Expert Report of Seth Nielson, Ph.D., Regarding Noninfringment of U.S. Patent Nos. 11,514,138 And 11,475,105 |
| Ex. 11 | Declaration of Michael Barrett (Carbyne027623-Carbyne027626) |
| Ex. 12 | U.S. Patent Application No. 13/706,254 (Patent No. 9,294,452) File History (Carbyne008392-Carbyne008620) |
| Ex. 13 | April 22, 2022 Bjorn Markus Jakobsson Deposition Transcript (Carbyne027328-Carbyne027431) |
| Ex. 14 | [redacted] Presentation (PP0000429-PP0000448) |
| Ex. 15 | Carbyne's 2nd Suppl. Resp. & Objs. to Apple's 2nd Set of Interrogatories Nos. 17-24 |
| Ex. 16 | August 21, 2024 Expert Report of Justin R. Blok |
| Ex. 17 | August 21, 2024 Opening Expert Report of Dr. Mark T Jones |
| Ex. 18 | July 9, 2024 Bjorn Markus Jakobsson Deposition Transcript |
| Ex. 19 | July 31, 2024 Mathew Zises Deposition Transcript |
| Ex. 20 | August 6, 2024 Michael Barrett Deposition Transcript |
| Ex. 21 | April 25, 2022 Decl. of J. Gutierrez (PayPal Paralegal Specialist)(Carbyne024844-Carbyne024845) |
| Ex. 22 | LinkedIn Page of Michael Barrett (Carbyne024478- Carbyne024480) |
| Ex. 23 | LinkedIn Page of Matt Zises (APL-CAR-PA_0041246-APL-CAR-PA_0041249) |
| Ex. 24 | LinkedIn Page of Andy Steingruebl |
| Ex. 25 | July 18, 2024 William Joseph Leddy III Deposition Transcript |
| Ex. 26 | August 11, 2010 email regarding [redacted] (Carbyne063433-Carbyne079632) |
| Ex. 27 | February 13, 2013 The Verge Article, "Lenovo, PayPal, and others launch the FIDO Alliance to replace passwords with more secure alternatives" (APL-CAR-PA_0052005-APL-CAR-PA_0052010) |

ii

*HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY*

| | |
|---|---|
| Ex. 28 | May 9, 2013 Ars Technica Article, " PayPal exec aims to 'obliterate passwords from the face of the planet.'" |
| Exs. 29-1, 29-2 ("Ex. 29") | July 2, 2016 Email regarding ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and attachment (Carbyne079623-Carbyne079632) |
| Ex. 30 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Carbyne079615) |
| Exs. 31-1, 31-2 ("Ex. 31") | July 10, 2016 Email regarding ▓▓▓▓▓▓▓▓▓▓ and attachment (Carbyne079634-Carbyne079641) |
| Ex. 32 | April 21, 2022 Michael Barrett Deposition Transcript (Carbyne024779-Carbyne024843) |
| Ex. 33 | April 18, 2022 Andrew Steingruebl Deposition Transcript (Carbyne023383-Carbyne023414) |
| Ex. 34 | April 20, 2022 William Joseph Leddy III Deposition Transcript (Carbyne023938-Carbyne024002) |
| Ex. 35 | Email chain with subject line ▓▓▓▓▓▓▓ ending on October 14, 2011 (Carbyne083268-Carbyne083276) |
| Ex. 36 | August 2, 2024 Andrew Steingruebl Deposition Transcript |
| Ex. 37 | *Mobile Authentication: Problems and Solutions* by Markus Jakobsson (Carbyne035538-Carbyne035658) |
| Ex. 38 | Proof of *Mobile Authentication: Problems and Solutions* by Markus Jakobsson (Carbyne024617- Carbyne024743) |
| Ex. 39 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ by Markus Jakobsson (Carbyne058244-Carbyne058248) |
| Ex. 40 | June 25, 2010 Email regarding ▓▓▓▓▓▓▓▓ (Carbyne073138-Carbyne073201) |
| Ex. 41 | August 27, 2024 Apple Inc.'s Cross-Questions to PayPal, Inc. (APL-CAR-PA_0059669-APL-CAR-PA_0059673) |
| Ex. 42 | September 6, 2024 Email between counsel for Apple Inc., Carbyne Biometrics, LLC, and PayPal (APL-CAR-PA_0059674- APL-CAR-PA_0059681) |
| Ex. 43 | Application No. AU 2013324127 |
| Ex. 44 | US Patent No. 9,378,356 B2 |
| Ex. 45 | US Patent No. 9,710,812 B2 |
| Ex. 46 | US Patent No. 8,108,318 B2 |
| Ex. 47 | US Patent Application Publication US 2009/0307140 A1 (APL-CAR-PA_0041375-APL-CAR-PA_0041388) |
| Ex. 48 | US Patent No. US 11,475,105 B2 |
| Ex. 49 | US Patent No. US 11,514,138 B2 |

*HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
   583 F.3d 832 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011) ....................................................3

*Cadence Design Sys., Inc. v. Bhandari*,
   No. C 07-00823 MHP, 2007 WL 3343085 (N.D. Cal. Nov. 8, 2007) ...............................5, 6, 8

*DDB Techs., L.L.C. v. MLB Adv. Media, L.P.*,
   517 F.3d 1284 (Fed. Cir. 2008) ...............................................................................................3

*ESN, LLC v. Cisco Sys., Inc.*,
   685 F. Supp. 2d 631 (E.D. Tex. Dec. 30, 2009) .......................................................................8

*Nichols v. Enterasys Networks, Inc.*,
   495 F.3d 185 (5th Cir. 2007) ....................................................................................................4

*Preston v. Marathon Oil Co.*,
   684 F.3d 1276 (Fed. Cir. 2012) ................................................................................................4

*Target Tech. Co. v. Williams Advanced Materials, Inc.*,
   No. SACV 04-1083, 2008 WL 5002935 (C.D. Cal. Nov. 21, 2008) ........................................4

*Woods v. Google LLC*,
   No. 5:11-cv-01263-EJD, 2018 WL 5292210 (N.D. Cal. Oct. 23, 2018) ...................................4

**Statutes**

Cal. Lab. Code § 2870 ........................................................................................................... *passim*

Cal. Lab. Code § 2872 .......................................................................................................................5

**Other Authorities**

37 C.F.R. § 1.211(b) .........................................................................................................................3

In advance of the November 1 evidentiary hearing on standing, Apple respectfully submits this pre-hearing brief to educate the Court about the issues, evidence, and arguments concerning Carbyne's lack of standing to assert the Authentication Patents.[1] Apple proposed to Carbyne a mutual filing of ten-page pre-hearing briefs by October 30, but Carbyne did not agree.

## I.   INTRODUCTION

The named inventor of the two asserted Authentication Patents, Dr. Jakobsson, worked at PayPal during the time he developed the alleged inventions and filed their priority applications. As a condition of his employment, Dr. Jakobsson had entered into an Employment Agreement with PayPal (the "Agreement") (Ex. 1).[2] That Agreement included a broad invention assignment provision that extended to "any and all Inventions" that Dr. Jakobsson conceived or reduced to practice while employed by PayPal, subject only to the limits of § 2870 of the California Labor Code. The invention assignment provision further contained present tense assignment language ("I…hereby assign") that automatically vested in PayPal any such inventions. The Authentication Patents' alleged inventions do not fall within the ambit of § 2870; indeed, Carbyne has expressly stated that § 2870 "does not apply to the alleged inventions." Ex. 15 at 17. As a result, there is and can be no dispute that the inventions of the Authentication Patents vested in PayPal, automatically, at the moment of conception. There is no assignment of those inventions or the resulting Authentication Patents back to Dr. Jakobsson or any entity he controlled. In sum, Dr. Jakobsson has never owned the Authentication Patents, and Carbyne, which purports to own those patents through a string of assignments beginning with Dr. Jakobsson, has no standing to sue on them.

---

[1] Carbyne asserts two families of patents in this case, which the parties refer to as the Fraud Patents and the Authentication Patents. Apple challenges Carbyne's standing as to the Authentication Patents only.

[2] PayPal was, at that time, still a subsidiary of eBay. His Employment Agreement was with eBay on behalf of eBay and its subsidiaries, including PayPal. Ex. 1 at Carbyne023032. Because Dr. Jakobsson's worked for the PayPal subsidiary, for simplicity, this brief refers to PayPal.

## II. PRESENTATION OF EVIDENCE AND ARGUMENT AT HEARING

Apple, as the moving party, should go first at Friday's hearing. Apple proposes that the Court permit 15-minute opening statements, followed by receiving testimony from witnesses. Apple intends to call Dr. Jakobsson, play deposition testimony from PayPal employees, and call Dr. Neilson, Apple's technical expert who will explain why the Authentication Patents relate to PayPal's business. Apple proposes that the parties also present 20-minute closing statements.

Apple should also present first based on the shifting burden of production. Carbyne bears the ultimate burden of proof on standing. Because Carbyne has a recorded patent assignment naming Dr. Jakobsson as the owner of the Authentication Patents, the burden of production shifts to Apple. Apple will discharge its burden by showing that the Agreement vested ownership exclusively in PayPal, shifting the burden back to Carbyne. Carbyne will then attempt to meet its burden of proof by showing that Section 2870 applies. Apple then should be permitted to rebut Carbyne's presentation regarding Section 2870, or other argument why the Agreement doesn't apply.

## III. KEY POINTS FOR THE HEARING

### A. The Agreement Automatically Assigned the Alleged Inventions and Resulting Patents to PayPal

#### 1. Dr. Jakobsson Conceived, Reduced to Practice, and Filed Patent Applications on the Alleged Inventions while Employed by PayPal

Dr. Jakobsson was a full-time employee of PayPal from May 2011 to September 2013. Ex. 2 at 318:8-11. Carbyne asserts a conception and reduction to practice date for the Authentication Patents of January 17, 2012, which is during his period of employment at PayPal. Ex. 3 at 7; *see also* Ex. 13 at 91:2-4 (Dr. Jakobsson stating he was employed by PayPal that date). Dr. Jakobsson filed the second of two provisional applications to which the Authentication Patents claim priority on January 17, 2012 (Ex. 5); the other provisional was filed on December 9, 2011 (Ex. 4), a date on which he was also employed by PayPal. Ex. 13 at 90:24-91:1. Dr. Jakobsson filed the first non-

2

provisional application to which the Authentication Patents claim priority on December 5, 2012, also during the period of his employment at PayPal.[3] Ex. 12.

## 2.   The Agreement Contains Broad Automatic Assignment Language

Dr. Jakobsson signed PayPal's Employment Agreement on April 20, 2011, which was countersigned and executed on May 16, 2011.  Ex. 1 at Carbyne023036-37; Ex. 2 at 355:21-24. Section 3.2 of the Agreement contains a broad invention assignment provision:



*Id.* at Carbyne023033 (emphasis added).

The language of the Agreement—"                                                                 "—resulted in the automatic assignment of all rights falling within the scope of the Agreement, without any further action required by Dr. Jakobsson or PayPal.  *See, e.g.*, *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 842 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011) (holding that "do hereby assign" in a contract stating "I will assign and do hereby assign" constitutes a "present assignment of [inventor's] future inventions"); *DDB Techs., L.L.C. v. MLB Adv. Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) (contract that "agrees to and does hereby grant and assign" constitute automatic assignments to the employer by "operation of law

---

[3] Provisional applications are non-public. *See* 37 C.F.R. § 1.211(b). Dr. Jakobsson also suppressed publication of the first non-provisional application. Ex. 12 at Carbyne008585.

with no further act required on the part of the [employee]"); *see also Preston v. Marathon Oil Co.*, 684 F.3d 1276, 1288 (Fed. Cir. 2012) (finding employer owned patent rights because the employment agreement, which included "hereby assign" language, had "an express assignment of rights in future inventions that automatically assigned rights").[4]

The language of the Agreement is binding and unambiguous: any Inventions and resulting Intellectual Property Rights developed by Dr. Jakobsson during the period of his employment with PayPal were automatically assigned to PayPal at conception, unless Dr. Jakobsson could prove that § 2870 applied.[5] *See e.g.*, Ex. 13 at 73:15- 22 (Dr. Jakobsson admitting that the Agreement "assigned inventions made during [his] employment except those subject to the statute"). And, there is no carveout for any purported "outside work" that Dr. Jakobsson did while at PayPal (unless that work fell within the scope of §2870).

In summary, the Agreement automatically assigned to PayPal everything that Dr. Jakobsson invented while he was employed by PayPal, unless such invention fell within the specific carve-out of § 2870. If an invention did not, Dr. Jakobsson ceased any ownership of it at the moment of conception or reduction to practice.

### B. Carbyne Cannot Carry its Burden that § 2870 Applies

Carbyne's original and supplemental interrogatory responses agreed that § 2870 "does ***not***

---

[4] California Courts also hold that "hereby assign and agree to assign"—the language of the Agreement—is an automatic assignment. *See, e.g.*, *Target Tech. Co. v. Williams Advanced Materials, Inc.*, No. SACV 04-1083, 2008 WL 5002935, at *1-2 (C.D. Cal. Nov. 21, 2008).

[5] During discovery, Carbyne refused to answer whether it contended that any provision of the Agreement is ambiguous. Ex. 15 at 22-25. Carbyne cannot now argue that any provision is ambiguous, particularly given that its refusal hindered Apple's ability to take discovery to address and resolve any alleged ambiguity. *See, e.g.*, *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) (citation omitted) ("[U]nder Texas state law, a person who wishes to argue contract ambiguity must affirmatively plead it, or else the argument is waived."); *Woods v. Google LLC*, No. 5:11-cv-01263-EJD, 2018 WL 5292210, at *3 (N.D. Cal. Oct. 23, 2018) ("A plaintiff claiming . . . written agreement is ambiguous must point to specific words in the agreement . . . .").

apply to the alleged inventions" of the Authentication Patents. Ex. 15 at 16-17. Thus, there is and should be no dispute that ownership of the Authentication Patents' inventions and resulting patents automatically passed to PayPal. Because PayPal never transferred ownership to Dr. Jakobsson or Carbyne, that ends the standing inquiry.

Notwithstanding Carbyne's interrogatory responses, Dr. Jakobsson cannot prove that § 2870 applies. Under both the Agreement and applicable law, Dr. Jakobsson bears the burden to prove that § 2870 applies, which he cannot satisfy. Ex. 1, § 3.2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); California Labor Code § 2872 ("In any suit or action arising thereunder [i.e., § 2870], the burden of proof shall be on the employee claiming the benefits of its provisions."). Section 2870 of California Labor Code applies only if Dr. Jakobsson can show that four conditions are **all** met: the alleged inventions (1) were "developed entirely" on his "own time," (2) were developed "without using [PayPal's] equipment, supplies, facilities, or trade secret information," (3) did not (at the time of conception of reduction to practice) "relate to" PayPal's business, or actual or demonstrably anticipated research or development, **and** (4) did not result from any of his work for PayPal. If any of those four criteria are not met, then the § 2870 exception does not apply.

At the time of their conception and reduction to practice, the purported inventions of the Authentication Patents did "relate to" PayPal's business, as well as to PayPal's actual or demonstrably anticipated research or development. "Courts interpreting employee assignment agreements in the context of section 2870 have construed the 'related to' phrase broadly." *Cadence Design Sys., Inc. v. Bhandari*, No. C 07-00823 MHP, 2007 WL 3343085, at *5 (N.D. Cal. Nov. 8, 2007).

5

██████████████████████████████████████████████

The Authentication Patents, titled "Authentication Translation," describe purported improvements in authentication techniques for mobile or other devices, and seek to solve the problem of password re-use or selection of low quality passwords:

> Providing credentials to a service, whether via a mobile or other device, is often a tedious experience for a user. Unfortunately, to make authentication easier for themselves, users will often engage in practices such as password re-use, and/or the selection of poor quality passwords, which render their credentials less secure against attacks. Accordingly, improvements in authentication techniques would be desirable.

'138 Patent at 1:37-44. The Authentication Patents purport to address the above problem by "translating" authentication from a biometric input (e.g., fingerprint), to some other credential (e.g., password) that can be used to login to a website, and thus avoiding manually entering the credentials. *Id*. 2:65-3:4. Carbyne's expert opines that the Authentication Patents describe "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Ex. 16, ¶26; *see also* Ex. 17, ¶21 (opining the patents are directed to "███████████████████████████████████████████████████████████").[6]

The evidence that the Authentication Patents "relate to" PayPal's business is overwhelming. For example:

- ████████████████████████████████████████████████████████████████████[7]

---

[6] Carbyne has also contended that these patents concern the secure storage of authentication information and are directed to hardware. But (1) none of the independent claims recites secure storage, (2) Dr. Jakobsson was unable to identify any element of the independent claims that requires secure storage (Ex. 18 at 163:25-169:5, 171:5-14, 176:15-178:9), and (3) PayPal's business and R&D did concern secure storage of authentication information (of course secure storage is relevant to a financial services company) and PayPal had several hardware product lines and patents directed to hardware, as explained below.

[7] The witnesses included Michael Barrett, former CISO of PayPal, and Jakobsson's manager Ex. 2, 344:2-10, Ex. 22; Matt Zises, Sr. Director Patent Counsel at PayPal Ex. 23; Andrew Steingruebl, Senior Director, Product Security Architecture, Ecosystem Security; and Bill Leddy, who worked on security strategy with respect to authentication. Ex. 25, 18:10-23.

██████████████████████████████████████████████

██████████████████████████████████████████████████████████████

- PayPal filed patents that are technologically similar to the Authentication Patents, including patents directed to biometric authentication on mobile devices. Ex. 7, ¶¶ 1780-1859 (Apple's expert, Dr. Nielson, opining without rebuttal that "PayPal was pursuing patents and research and development (R&D) in substantially similar subject matter to the Authentication Patents at least as early as June 2008 and as recently as January 2021" after reviewing 16 PayPal patents); Ex. 8 (764 patents that were assigned to PayPal/eBay, filed between April 2010 and September 2013, and share at least one CPC code with the Authentication Patents). ████████████████████████████████████████████████████████████████

- ████████████████████████████████████████████████████████████████████████████████████████████████████████████████

- PayPal was a founding member of the FIDO alliance, which at the relevant timeframe was working on biometric authentication on mobile devices and was very much concerned about secure storage of user authentication information on a device. See, e.g., Ex. 27, Ex. 28, Ex. 14; Ex. 20, 53:11-14. ████████████████████████████████ The technology behind the accused functionality here, Apple's passkeys, was spearheaded by FIDO. ████████████████████████████████████████████████████████████████

- As of at least 2011, PayPal had been selling, pursuing R&D, and partnering with other companies to offer hardware authentication-based systems. Ex. 7, ¶¶ 1860-1875 (reviewing hardware sold and promoted by PayPal including, a point-of-sale USB device (acquired 2011), a physical card reader for mobile devices (launched 2012), add-on hardware for hands-free payment (debuted in 2013), and collaboration with Samsung to integrate PayPal's payment system with a biometric sensor for the mobile phone (as early as 2012); ████████████████████████████████

- In 2016, when the first patent in the family of the Authentication Patents issued, Dr. Jakobsson concluded that PayPal was infringing that patent, based on technology that PayPal was using for a product it was developing while Jakobsson was at PayPal. Ex. 29, Ex. 30, Ex. 31. Specifically, Dr. Jakobsson wrote that PayPal's use of authentication and authorization systems OAuth 2.0 and OpenID Connect infringed that patent. Ex. 29. As soon as the first patent in the Authentication Translation patent family issued in 2016, Dr. Jakobsson sought investors by identifying potential infringers, including PayPal. Ex. 29; Ex. 31. Since 2009, PayPal has been working on developing similar authentication and authorization systems, was a leader in this space, and implemented OAuth 2.0 as early as April 30, 2013—months before Dr. Jakobsson's departure from PayPal. See Ex. 7, ¶¶ 1876-1893 (discussing PayPal's use and development of OAuth 2.0 and Open ID); Ex. 9 (announcing Log In with PayPal based on OAuth); ████████████████████████████████████████████

### C. PayPal Never Assigned the Inventions Back to Dr. Jakobsson

Dr. Jakobsson has not produced any assignment of the alleged inventions of the Authentication Patents from PayPal back to him. Dr. Jakobsson has contended that he told his manager, Michael Barrett, about his invention during his time at PayPal, and that Mr. Barrett told Dr. Jakobsson that PayPal had no interest in them, so Dr. Jakobsson could have them. That contention is both legally irrelevant and factually unsupported.

Because the alleged inventions were assigned to PayPal at conception—i.e., before any alleged conversation with Mr. Barrett—ownership back to Jakobsson would have to be effectuated by an assignment back, which must be proven by a writing. 35 U.S.C. § 261. An oral assignment is not permitted.[8] Here there is none. Moreover, § 12.8 of the Agreement prohibited any modifications ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"—which Jakobsson admits never occurred. Ex. 2 at 444:1-7; 449:9-451:10. *See Cadence Design*, 2007 WL 3343085, at *4 & n.2 (alleged approval by HR "ineffective to change the terms of the Invention Agreement because the Agreement specifically prohibited modifications not in writing and signed by both [parties]").

As set forth in § 3.4 of the Agreement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ There is no evidence any of those things occurred.[9]

---

[8] *See ESN, LLC v. Cisco Sys., Inc.,* 685 F. Supp. 2d 631, 643 (E.D. Tex. Dec. 30, 2009) ("Because the Employment Agreement effected an automatic assignment to Iperia, Mr. Girard could not have obtained rights to the '888 application by *post hoc* oral modification of the Employment Agreement.").

[9] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8

███████████████████████████████████████

Carbyne has produced no evidence that Dr. Jakobsson complied with these requirements of the Agreement, let alone a written notification back from PayPal authorizing him to keep the alleged inventions.

███████████████████████████████████████████
██████████████████████████████. ███████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████
████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
█████████████████ ██████████████████████████
██████████████████████. Ex. 18 at 302:14-24. It is not credible that a sophisticated technology company with a team of in-house IP professionals would have agreed that Dr. Jakobsson could keep the alleged inventions ██████████████████████ ██████████████) without requiring a license back to those inventions.

    **D.    Dr. Jakobsson's Claim that He Disclosed His Inventions to PayPal Employees is Irrelevant**

In its discovery responses here, Carbyne has repeatedly contended that PayPal does not own the Authentication Patents because Dr. Jakobsson disclosed to PayPal the alleged inventions.

9

███████████████████████████████████

Dr. Jakobsson has adduced no evidence of any such disclosure, let alone one that complied with the stringent requirements of the Agreement (and there is broad agreement that he never disclosed the provisional applications, as he was required to do, and which would enable a company to make an informed decision about IP ownership).  But even if he had, disclosure to PayPal of an invention does not negate the Agreement's assignment, or place the invention within the scope of Section 2870—indeed, any contrary argument would be absurd.

To the extent Carbyne argues that Dr. Jakobsson and PayPal agreed that notifications under agreement could be verbal or via email, ████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████.  Indeed, ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

precisely because other forms of delivery are, such as e-mail, are more likely to go undelivered or lost.  Extensive discovery has been taken of PayPal, Ebay, and of Dr. Jakobsson's e-mails—none of the requisite writings set forth in § 3.4 of the Agreement have been produced.  Indeed, none exists. ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████

| | |
|---|---|
| Dated: October 30, 2024 | */s/ Andrew Radsch*<br>Brian C. Nash<br>Regan J. Rundio<br>**MORRISON & FOERSTER LLP**<br>300 Colorado St., Suite 1800<br>Austin, TX 78701<br>Tel: (512) 617-0650<br>Fax: (737) 910-0730<br>Email: BNash@mofo.com<br>Email: Rrundio@mofo.com<br><br>James R. Batchelder (*pro hac vice*)<br>Andrew Radsch<br>James Mack<br>**ROPES & GRAY LLP**<br>1900 University Avenue<br>East Palo Alto, CA 94303-2284<br>Tel: (650) 617-4000<br>Fax: (650) 617-4090<br>Email: James.Batchelder@ropesgray.com<br>Email: Andrew.Radsch@ropesgray.com<br>Email: James.Mack@ropesgay.com<br><br>Cassandra Roth (*pro hac vice*)<br>**ROPES & GRAY LLP**<br>1211 Avenue of the Americas<br>New York, NY 10036-8704<br>Tel: (212) 596-9000<br>Fax: (212) 596-9090<br>Email: Cassandra.Roth@ropesgray.com<br><br>Allen S. Cross (*pro hac vice*)<br>Nicole S. L. Pobre (*pro hac vice*)<br>**ROPES & GRAY LLP**<br>2099 Pennsylvania Avenue, N.W<br>Washington, DC 20006<br>Tel: (202) 508-4600<br>Fax: (202) 508-4650<br>Email: Allen.Cross@ropesgray.com<br>Email: Nicole.Pobre@ropesgray.com |

*HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY*

S. Lara Ameri (*pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
Email: Lara.Ameri@ropesgray.com

Jeffrey T. Quilici
TX State Bar No. 24083696
ORRICK, HERRINGTON &
SUTCLIFFE LLP
200 W. 6th Street, Suite 2250
Austin, TX 78701
Tel: (512) 582-6950
Fax: (512) 582-6949
Email: jquilici@orrick.com

***Attorneys for Defendant Apple Inc.***

*HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served by electronic mail on October 30, 2024.

                                                */s/ Andrew Radsch*
                                                Andrew Radsch